This time we'll hear Morris v. Colvin. Good morning. If it please the court, my name is Elizabeth Hongs on behalf of this case turns on one very clear error. When faced with a pro se claimant with only a ninth grade special education, the ALJ failed to develop the record in any way. Instead of developing the record, he chose to make a decision on an incomplete record that consisted only of 24 pages of total medical evidence and he decided Morris just didn't seem that bad. Now this case needs to be looked at through the lens of Sheila herself. She was unrepresented. She had only a ninth grade education. She indicated on her disability reports that she had been in special education. She had only a stack of medical paper that was folded up that she handed to the ALJ. When the ALJ went through it, there were duplicates, there were random letters, there and then she tried to give him some more and he said I don't... The ALJ did elicit the records of the of the treating physician, Dr. Gomez. Um, he did not, your honor. There is actually no evidence that he did. What came up in the briefings... All that's in the records from Dr. Gomez are the reports that were provided by your client. Yes, the there were two treating source statements. One, I believe, came in via fax in November 2011. It's from an unknown private business. I can only assume it was claimant. It was in, I believe, November 2011. It came from, I believe, Island Shipping Center and this was actually in November 2011, which was significantly before the letter that defendant and actually at the district court level said that Dr. Gomez got and responded to. There's actually no evidence that the ALJ himself, Sua Sponte, elicited any evidence from Dr. Gomez. There is this letter from... Somebody contacted Dr. Gomez and Dr. Gomez provided his treatment notes. We have no... At the initial agency level, it appears so. There were some records elicited. Now, the the actual hearing wasn't until March 2013. So we have records from, I believe, the last actual treatment records that we have from Dr. Gomez's office were in October 2011. What we have after that were medical source statements that did not have a corresponding medical examination, which can only be assumed to have been provided by the claimant. Providing progress notes through 2011. Through 2011, yes. And then at the hearing, one page of one clinical summary was given to the ALJ. Now, this is... It says it's page one of two. It appears to be what the claimant would be given when she leaves her appointment. It doesn't actually have the doctor's findings. It doesn't have what the doctor diagnosed her with. It has what she said. Claimant at your patient complaints. Some reports, but looking at the totality of the reports, what is there that suggests that there was a need for further inquiry because the district court, the agency, seemed to think that there just wasn't enough here to think that her limitations were totally disabling. So what is there that suggests there was a need for further inquiry on that point? Well, what we know we have from the records, we can see that there would be at least three more complete treatment records. Actual treatment records from the doctor. She indicated she had an appointment in January 2012. One of the medical source statements indicates she was examined by Dr. Gomez on May 17, 2012. And there's actually the... We would want the actual treatment record from the December 2012 clinical note. We also need to make sure that there isn't any more. To sound cliche, we don't know what we don't know right now. She was during this time prescribed opiates. That indicates that she would need to have consistent treatment to keep her prescription. She was prescribed Lortab for pain. So that means there could also be additional records from that 2011 to 2013 when the hearing was. Excuse me? She indicated that she had carpal tunnel syndrome or the ALJ found her to have the severe impairments of carpal tunnel syndrome, obesity, hypertension, hypothyroidism, and degenerative disc disease. Now, claimant herself testified in a very rudimentary way. She said that her nerves were going all which ways. She described that her blood ain't flowing in the right direction. She had something in her arms. So her ability to actually articulate what her disabilities were, I think was compromised. And that should have put the ALJ on notice that he was required to do more. In fact, even just ask for any records whatsoever. There is, as I recall, a document from Dr. Gomez in 2010 finding no mental limitations. It sounds implausible, but isn't that something that an ALJ can rely upon in the sense that if the treating physician says this one day and that the other day, that you don't really have to follow one, you know, you don't have to you don't have to follow the indication that she's disabled. Well, the issue becomes that was in 2010. First of all, that was before the relevant period. Second, we also have Dr. Gomez's report in 2012 that indicates she did have mental limitations. And what that can be read in the way most intervening years. To say that you could just rely on one statement in 2010, which means you wouldn't have to develop the record in any way for, I'm not even saying just mental limitations. I'm not saying necessarily that she has an anxiety disorder or depression. What I'm saying is that the ALJ had to get all of Dr. Gomez's records to be able to understand Dr. Gomez's treating source statements. Dr. Gomez did in 2012 say she had pretty extensive physical limitations and extensive medical or mental limitations. And without the actual treatment records from Dr. Gomez from 2011 to 2013, when we know that there were at least three records, if not more missing, it makes it impossible for the ALJ to properly determine which medical opinion to give weight to. It's also concerning. I know it seems like it may only be three records, but this court has had a very long history of protecting that you need to have a complete record. This isn't a game of horseshoes, this isn't a game of hand grenades. This is an issue where you need to have a complete record. We have, this court decided in Lopez, one four-day hospital stay. In another case, in Taylor v. Barnhart, the case was remanded for a pro se claimant just to check the person's physical weight because that was a relevant issue. So even if it is only the three records that we know are either missing or incomplete, that is enough for this court, according to its precedent, to say that the ALJ needed to scrupulously and conscientiously protect Sheila Morris's pro se rights. You want us to send this back. What do the records show? We don't know, Your Honor. Why haven't you all obtained them? We, at this point, she came to us once we were at the federal court level. So at this point, to be able to admit the previous... No, but at least you contact the doctor and you know whether or not they're going to support this argument because, you know, we're in a situation where she was also evaluated by a neurologist who's got quite specific findings as to her ability to have ranges of motion and they're not consistent with complete disability. So if you're saying, well, you know, despite that, if we were to get her doctor's records, that would support her claim. I'm just perplexed as to why we don't know that. Well, at this point, we also, as far as the neurologist treatment, she also had deep vein thrombosis, which is... I'm only asking you why we don't have the records that you're saying we have to remand in order to let them be procured. You have no idea what they show, as I understand it. And neither did the ALJ at the administrative level. But we do know that in 2011, Dr. Gomez said that she needed to be out for three months, but she could return to work in June of 2011. That was actually, I believe, I believe that was the previous doctor that just did a three-month. We also have Dr. Gomez in 2012. I misspoke, Dr. Brewer, you're right. And we also have her current treating doctor, so that was her former doctor who had retired. She had transitioned to Dr. Gomez. We do have Dr. Gomez saying, on two separate occasions, that claimant was disabled. So if she had neurologist treatment that indicated good range of motion, that doesn't indicate anything to her carpal tunnel syndrome. That doesn't indicate anything to her deep vein thrombosis, which is something that she described at her hearing that it was a very rudimentary way. I think we need to keep going back to how Ms. Morris presented to the ALJ. Was it fundamentally fair that the ALJ knew all the rules? Judge McDougall is a very respected administrative law judge who had practiced for a very long time in our area. He knew the rules. And what he decided was, without getting the balance of the treatment records, she just doesn't seem that bad. We will hear you under a bubble. Absolutely. Thank you, Your Honor. May it please the Court. I'm Graham Morrison on behalf of the Commissioner. Plaintiff has argued that Dr. Gomez's records were not adequately developed. Here, Dr. Gomez submitted two separate medical source statements concerning the 18-month period issue from September 2011 to March 2013, as well as submitting contemporaneous treatment records, which reflected only conservative treatment and mild findings, including normal extremities and full range of motion in all areas. You say he submitted in response to what? There were a number of requests here. Originally, the New York State Office of Temporary Disability requested records from Dr. Gomez in December 2011. That's at 190 in the record. Subsequently, the Social Security Administration sent a letter to Dr. Gomez in April 25, 2012, requesting all medical records to date. That's 161 in the medical record. And at the time, DOJ left the record open so she could continue to submit records. And the notes that were submitted from Dr. Gomez described the plaintiff as stable and showed unremarkable findings. Is it evident that there are three sets of treatment notes that are not included, that is to say appointments with Dr. Gomez that did not yield a treatment report in the record of this case? It is not clear that these records exist. The first record, the only evidence we have of it is that in her disability statement, she wrote that my next appointment is scheduled January 31, 2012. We don't know if it was attended, we don't know if it was rescheduled, we don't know if it was canceled. We simply don't have any hard evidence. The second record at issue... There is an implied or expressed representation from Dr. Gomez that he has all of the medical records for this claimant. The record requests that were sent to him asked for all records up to date, correct? And he also submitted two opinion statements, which are important because they show comprehensive overall views. And at least towards the latter opinion statement, it was simply not reliable. Dr. Gomez alleged serious limitations in seeing, hearing, speaking, social functioning, and making simple decisions, none of which were rationally related to plaintiff's diagnosis of back pain or supported by any other diagnosis. She has sufficient mental deficits. Much of that would follow. The seeing and hearing are certainly totally unrelated to anything, and there are no mental health diagnoses in the record, and Dr. Gomez certainly wasn't treating her for anything along those lines. And we also have other doctors in the record. We have Dr. Aurora, Dr. Koenig, and Dr. Brewer, all of which supported the AOJ's decision. Dr. Aurora concluded that plaintiff only had mild limitations for prolonged lifting, standing, and walking, consistent with the RFC conclusion. Dr. Koenig found only mild carpal tunnel syndrome and recommended only conservative treatment. Dr. Brewer stated that Morris could return to work and that he, quote, found nothing remarkable on physical exam. You also have plaintiff's own testimony, which undermined her claim. She openly stated... When she returned to work, I'm sorry, I should have... What was she working? What was she doing? She had previously worked as a teacher's aide and a nurse's aide, but she had a very limited work history. I don't believe she had worked for, like, 25 years at the time of her hearing. And she stated that, I mean, the AOJ asked her, why can't you work, and she said that she didn't have to. She didn't want to, and she had no history of doing so long before the onset date, as alleged. And also, as noticed, the plaintiff had the opportunity to gather this additional evidence and submit it to the AOJ or to submit it to the Appeal Council. Even after getting representation, she could have... There were procedures to submit it to the federal court. I believe there have been procedures to have submitted it to this appellate court that have had these records exist and really been determinative to her claim. In sum, here the AOJ had sufficient evidence to render a decision and produced one that fairly reflected the plaintiff's functional abilities. So unless there are any other questions, the Commissioner rests on her brief. Thank you. We'll hear rebuttal. Thank you, Your Honors. To start with, I just want to take the overarching stance that when Mr. Morrison says that claimant testified she didn't want to work, that never happened. Now, there is absolutely no case law that says if a person runs off at the age of 16 and gets married that the AOJ doesn't have a duty to develop the record. That is completely irrelevant. Now, as far as the claim that Dr. Koenig's examination, that was his hand for plaintiff's carpal tunnel, excuse me, for Morrison's carpal tunnel, that actually indicated that she had moderate carpal tunnel syndrome. Now, the jobs that were found at Step 5, I believe it was cashier and fast food worker, those, as indicated in my reply brief, all require constant or frequent handling and figuring. A fast food worker doesn't have to work the register. But you may actually be reaching for a fry bin, you may be flipping hamburgers, you may even be cleaning. All of those things could require, according to the DOT and the selected characteristics, could still require frequent handling and fingering, which means Dr. Koenig's own examination that did actually show significant findings. You're suggesting that mild carpal tunnel syndrome is basically a disqualification from almost any work, because everything requires reaching for something. I mean, I'm reaching for your brief. First of all, it was moderate carpal tunnel in her right hand. Now, there are plenty of jobs, to be honest, in the DOT that require less than constant or frequent handling and fingering. So based on the selected characteristics, which specifically identifies the needs of different jobs throughout the national economy, there are a lot that don't require. But the ones that were found at Step 5 for this appeal did require frequent handling and fingering. So to say that Dr. Koenig's opinion blanketly supports the ALJ's RFC is not appropriate. Also, because the record is incomplete, we don't actually even reach the substantiality argument. If you're looking at Moran or Thibodeau cases that were decided by the circuit, we don't actually reach substantiality. It's also concerning that they're indicating that medical source statements that didn't have a corresponding examination or had a corresponding examination that was not in the record were treatment notes that the ALJ could use to make its determination. Basically, Commissioner's argument is that the ALJ could compare Dr. Gomez's statements to Dr. Gomez's statements and reject them. You need something... You need a basis to compare these opinions. Dr. Gomez... We really need Dr. Gomez's treatment records to determine the appropriate weight to give Dr. Gomez's opinions. Thank you. Thank you. Thank you both. We'll reserve decision. The last case on calendar is Cornello v. The State of Connecticut, which we take on submission. Please adjourn court. Court is adjourned.